No. 83-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF
C.S., a Youth.

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas Meissner argued, Lewistown, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Jim Scheier argued, Asst. Atty. General, Helena
John Paulson, Deputy County Attorney, Lewistown,
Montana

Submitted: February 29, 1984

Decided: May 24, 1984

Filed: MAY ' 1984

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case arose out of a series of incidents which led to appellant being adjudged a delinquent youth. From an order of commitment placing her in the custody of the Montana Department of Institutions, this appeal is taken.

On March 31, 1983, the Fergus County Attorney filed a petition for a Youth Hearing in the District Court of the Tenth Judicial District of the State of Montana, requesting that appellant be adjudged a delinquent youth. At the time, she was fifteen years of age. The petition alleged that during the month of March, 1983, appellant committed the offense of violation of privacy in communication, a misdemeanor as provided in Section 45-8-213, MCA. The facts underlying the offense were that on three separate occasions, appellant and several minor friends made numerous telephone calls to a Lewistown, Montana residence. The purpose and effect of these calls was to harrass a woman living there. On April 6, 1983, an evidentiary hearing was held, at which the District Court found the allegations of the petition to be true.

The dispositional hearing was held on April 13, 1983, and appellant was ordered committed to the Department of Institutions until she reaches the age of twenty-one, unless the Department deems an earlier release appropriate. She was placed in the Mountain View School for Girls in Helena. A notice of appeal was filed with this Court on May 17, 1983, however, jurisdiction was returned to the District Court to allow entry of findings. After the findings were properly entered, this Court resumed jurisdiction for the

purpose of this appeal.

The sole issue raised on appeal is whether appellant's constitutional right to equal protection has been denied because her term of commitment is potentially longer than the maximum sentence which could have been imposed had the same offense been committed by an adult. The maximum amount of time appellant could spend in the custody of the Department of Institutions is six years, which is much more than the maximum sentence for adults who have committed the offense of violation of privacy in communications. Section 45-8-213, MCA, provides for a fine of $500 or imprisonment of up to six months or both had the same offense been prosecuted in a criminal action.

The initial inquiry in any equal protection analysis is whether the identified groups or classes are similarly situated with respect to the challenged statute, ruling or governmental action. Montana Land Title Association v. First American Title (1975), 167 Mont. 471, 539 P.2d 711. We find that adults and minors are not similarly situated with respect to Montana's sentencing laws for three reasons.

First, as the State points out, appellant was not convicted of a crime but committed after being found a delinquent youth under Section 41-5-403, MCA. While it is true that both commitment and sentencing are deprivations of physical liberty, the cause and desired result of each is different. A sentence of imprisonment following a criminal conviction is imposed because a particular crime was committed, and its purpose is both retributional and rehabilitational. Though a juvenile commitment is usually triggered by a crime, the commitment is strictly for

rehabilitation, not retribution. The purpose of the Youth Court Act is to, ". . . [P]rovide for the care, protection, and wholesome mental and physical development," of youths falling under its jurisdiction, and ". . . [T]o remove from youth committing violations of the law the element of retribution and to substitute therefore a program of supervision, care [and] rehabilitation. . . " Section 41-5-102, MCA. There is more than an artificial distinction between commitment under the Youth Court Act and sentencing under the Montana Criminal Code. Thus an adult sentenced for a crime and a juvenile committed to the youth authorities are not similarly situated with respect to the purpose of their detention.

Second, the physical liberty interests of minors and adults are qualitatively different. The liberty interest of a minor is subject to reasonable regulation by the state, to an extent not permissible with adults. Planned Parenthood of Central Missouri v. Danforth (1976), 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 and Carey v. Population Services International (1977) 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675. Danforth, Carey and the cases cited therein make it clear that, contrary to appellant's claim, the doctrine of parens patriae is very viable today.

Finally, we have examined those cases cited from other jurisdictions which have addressed this question, and found persuasive those which concluded that adults and juveniles are not similarly situated in these circumstances. cf. In Re Eric J. (Cal. 1980), 601 P.2d 549. Those cases have relied on the reasoning outlined above in upholding commitments similar to appellant's here. Though each

state's juvenile corrections act is arguably different, the purpose of each is the same; to provide a mechanism through which the state can act as the parens patriae of its youth.

Affirmed.

_____ Conway Harrison
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

-5-