No. 93-403

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DEBRA RUTH MONROE and MARVIN MONROE,

     Plaintiffs and Appellants,

v.

THE STATE OF MONTANA,

     Defendant and Respondent.

FILED

MAR 3 0 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

     For Appellants:

          Kirk Bond (argued) and Carl A. Hatch, Small, Hatch,
Doubek & Pyfer, Helena, Montana

     For Respondent:

          Honorable Joseph P. Mazurek, Attorney General;
Clay R. Smith, Solicitor (argued), Helena, Montana

          Mike McGrath, County Attorney and Vicki Frazier,
Deputy County Attorney, Helena, Montana


                        Submitted:  February 16, 1994

                          Decided:  March 30, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Debra Ruth Monroe and Marvin Monroe seek a declaratory judgment that § 87-2-102(2), MCA (1989), is void for vagueness. The statute defines "resident" for purposes of issuing resident fishing, hunting, and trapping licenses. The District Court for the First Judicial District, Lewis and Clark County, upheld the constitutionality of the statute. We affirm.

The issue is whether the term "resident" is unconstitutionally vague as defined in § 87-2-102(2), MCA (1989).

Montana has long assessed higher fees from non-residents than from residents of Montana for licenses to fish, hunt, and trap in this state. This fee differential has been upheld against challenges based upon the Privileges and Immunities Clause of Art. IV, § 2, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Baldwin v. Montana Fish and Game Comm'n. (1978), 436 U.S. 371, 56 L.Ed.2d 354, 98 S.Ct. 1852.

In January 1992, the State of Montana brought misdemeanor charges in Lewis and Clark County Justice Court against Debra Ruth Monroe and Marvin Monroe, alleging that they made false statements in obtaining resident hunting licenses in violation of § 87-2-205, MCA. Marvin Monroe also faces related charges, including illegally killing big game animals.

"Resident" is defined, for purposes of § 87-2-205, MCA, at § 87-2-102, MCA. The Monroes moved to dismiss the charges against them, arguing that § 87-2-102(2), MCA (1989), which applies in this

2

case, provides no precise and clear definition of "resident." The Justice Court denied the motion to dismiss.

The Monroes then filed this declaratory judgment action in District Court. The Justice Court granted a stay of the criminal matter during the proceedings in District Court. In July 1993, the District Court entered judgment in the State's favor and dissolved the stay in Justice Court. The Monroes appeal. Because this is a challenge to the facial validity of the statute, no facts are before us concerning the Monroes' residency status.

The State argues in its brief that a declaratory judgment proceeding may not be used to attack a decision in an ongoing criminal prosecution. By order dated December 7, 1993, this Court declined to consider that argument.

Is the term "resident" unconstitutionally vague as defined in § 87-2-102(2), MCA (1989)?

Statutes are accorded a presumption of constitutionality; the burden of proof is upon the party challenging a statute's constitutionality. GBN, Inc. v. Montana Dept. of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597. Any doubt is to be resolved in favor of the statute. GBN, 815 P.2d at 597.

This Court has set forth the standard for facial vagueness as "a statute . . . is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute." City of Choteau v. Joslyn (1984), 208 Mont. 499, 505, 678 P.2d 665, 668 (citation omitted). However, the

3

fact that a statute is difficult to apply to some situations does not render it unconstitutionally vague.

> The strong presumptive validity that attaches to [a legislative act] has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.

United States v. National Dairy Corp. (1963), 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561, 565. The complainant attacking a statute's validity must prove that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 495, n. 7, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (citation omitted).

Section 87-2-102, MCA (1989), provides:

> **Resident defined.** In determining a resident for the purpose of issuing resident fishing, hunting, and trapping licenses, the following provisions shall apply:
> . . .
> (2) Any person who has been a resident of the state of Montana, as defined in 1-1-215, for a period of 6 months immediately prior to making application for said license shall be eligible to receive a resident hunting, fishing, or trapping license.

Section 1-1-215, MCA, provides:

> **Residence--rules for determining.** Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
> (1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
> (2) There can only be one residence.
> (3) A residence cannot be lost until another is gained.
> . . .

4

(6) The residence can be changed only by the union of act and intent.

In 1991, § 87-2-102(2), MCA, was revised so that it no longer refers to § 1-1-215, MCA, in defining "resident." The Monroes point to that revision in arguing that the 1989 statutory scheme is unconstitutionally vague. They admit, however, that neither the fact of the revision nor the testimony in support of the revision (which they have cited in their brief) determines the constitutionality of the 1989 version of the statute. The fact that the 1991 revision made the statute clearer as to some applicants, such as persons who spend part of each year in Montana, does not render the 1989 statute unconstitutionally vague.

We have not previously construed § 1-1-215, MCA, in the criminal law context, but the Monroes cite civil cases in which this Court has applied that statute. Section 87-2-102(2), MCA (1989), in addition to incorporating § 1-1-215, MCA, provides that a person must meet the definition of "resident" "for a period of 6 months immediately prior to making application for [a license to fish, hunt, or trap.]" This six-month duration requirement distinguishes this case from the cases interpreting § 1-1-215, MCA, in a civil context.

In Hoffman, the United States Supreme Court upheld a village ordinance against a challenge of facial vagueness. The ordinance, violation of which was punishable as a misdemeanor criminal offense, required local businesses to obtain a license if they sold any items "designed or marketed for use with illegal cannabis or drugs." The Court stated that a law challenged as unduly vague on

5

its face must be demonstrated to be impermissibly vague in all of its applications. Hoffman, 455 U.S. at 497. The Court ruled that the ordinance's clear applicability to at least some items sold by the plaintiff rebutted the facial challenge. Hoffman, 455 U.S. at 500. Counsel for the Monroes agreed at oral argument before this Court that the Hoffman standard applies in this case.

Section 87-2-102(2), MCA (1989), requires that, for a period of six months immediately preceding the application for a resident license to fish, hunt, or trap in Montana, the applicant must have been a resident as defined in § 1-1-215, MCA. Under § 1-1-215, MCA, a residence is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which one returns in seasons of repose; a person has only one residence; a residence is not lost until another residence is gained; and residence is established by the union of act and intent. Certainly a person who came into Montana on the day before hunting season, on his or her first trip to this state, and intending to stay for only a week or two of hunting, would know that he or she did not qualify as a resident under this standard.

We conclude that at least some applicants could determine whether they qualified as residents of Montana under § 87-2-102(2), MCA (1989). Therefore, the Monroes' facial challenge to the statute must fail. We hold that the District Court did not err in upholding the constitutionality of the statute. Affirmed.

Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

7

Justice Karla M. Gray specially concurring.

I concur in the result reached by the Court, but not in all that is said in reaching that result. Specifically, I disagree that the "impermissible in all its applications" language from Hoffman Estates v. Flipside, Hoffman Estates, Inc. (1982), 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (Hoffman) is to be read as literally as the Court suggests. As a practical matter, such a reading would make it impossible to succeed in any facial void for vagueness challenge. Nor is such a literal reading supported by the United States Supreme Court's discussion and application of that language in Hoffman.

Indeed, in all candor, I hardly know what to make of the Hoffman decision. Throughout the opinion in that case, the Supreme Court appears to intermingle traditionally separate "void for vagueness on its face" and "void for vagueness as applied" concepts. It does so by repeated references in its pronouncements, and its application of those pronouncements, to factual and record-based materials relating to Flipside's conduct, the notion of examining a complainant's conduct before analyzing other hypothetical applications of the law, and the like. In so doing, the Supreme Court has blurred the rules governing the heretofore purely legal issue involved in a facial void for vagueness challenge. Given the posture in which the present case is before this Court--that is, on the facial challenge and without a single shred of fact or evidence of record--I conclude that Hoffman provides little appropriate or applicable guidance here.

8

I believe it is appropriate to begin with the Supreme Court's oft-stated pronouncement of the critical element involved in evaluating criminal statutes under a void for vagueness challenge, noting its consistency with this Court's standard, as enunciated in City of Choteau v. Joslyn (1984), 208 Mont. 499, 678 P.2d 665:

> [B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.

Grayned v. City of Rockford (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227. In short form, this element might be referred to as "fair warning."

I conclude that adding the scienter, mens rea or mental state element of the offense with which the Monroes were charged to the two statutes relating to residency provides sufficient fair warning of the conduct necessary to "stay on the right side of the law" and negate a successful facial challenge to the statutes at issue here. I note that, in Hoffman, the Supreme Court specifically referenced and applied its long-standing recognition of a scienter requirement as mitigation of a statute's vagueness, "especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Hoffman, 455 U.S. at 499 (citations omitted).

In the case before us, I agree that the "guidelines" contained in § 1-1-215, MCA, are insufficient on a stand-alone basis to withstand a facial challenge for vagueness in the context of a criminal proceeding. It is my view that the 6-months factor

9

Boyce Motor Lines v. United States (1952), 342 U.S. 337, 340, 72 S.Ct. 329, 330-31, 96 L.Ed. 367, 371.

For the reasons stated herein, I join in the result reached by the Court: namely, that the Monroes' facial challenge on vagueness grounds has not been sustained here.

_____
                Justice

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority opinion has misconstrued the vagueness doctrine, misapplied federal case law, and in the process, done severe damage to the Due Process Clauses of the Montana and Federal Constitutions.

The Monroes were charged with violating § 87-2-205, MCA, by providing a false statement in their application for wildlife conservation licenses. The false statement they are accused of making was that they were residents of Montana.

Section 87-2-102(2), MCA (1989), provided that residency for purposes of determining entitlement to a resident hunting license was determined under § 1-1-215, MCA. The relevant part of that statute provides:

> Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
> (1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.

What does that mean? Does it mean that if you live and work in Texas for 11 months out of the year, but return to Montana for one month during your annual vacation you are a Montana resident? The statute obviously does not provide any objective criteria which would put people with connections to Montana and some other state on notice of whether they satisfied the residency requirement found in the Fish and Game laws.

12

We have previously held that a statute can violate the Fourteenth Amendment of the United States Constitution, and Article II, Section 7, of the Montana Constitution, if it is unconstitutionally vague. *State v. Woods* (1986), 221 Mont. 17, 22, 716 P.2d 624, 627.

> The issue of "vagueness" with regard to a statute or ordinance can be raised in two different connotations: (1) whether it is so vague the law is rendered void on its face; or (2) if it is vague as applied in a particular circumstance.
>
> The general rule is that a statute or ordinance is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. *United States v. Harriss* (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989.

*City of Choteau v. Joslyn* (1984), 208 Mont. 499, 505, 678 P.2d 665, 668.

The United States Supreme Court elaborated on the rule set forth in *United States v. Harriss* in its decision in the case of *Bouie v. City of Columbia* (1964), 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894. In that case, the U.S. Supreme Court gave the following explanation of the vagueness doctrine, as it pertains to the Due Process Clause of the United States Constitution:

> The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by this Court. As was said in *United States v. Harriss*, 347 U.S. 612, 617,
>
> > "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

13

> Thus we have struck down a state criminal statute under the Due Process Clause where it was not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally v. General Const. Co.*, 269 U.S. 385, 391. We have recognized in such cases that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law," *ibid.*, and that "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453.

*Bouie*, 378 U.S. at 350-51 (footnote omitted).

If it is not sufficiently apparent from the murky language of the residency statute itself that people of reasonable intelligence would be unable to ascertain who is or is not a resident of Montana under its terms, that conclusion necessarily follows from our prior decisions. In fact, in *McCarthy v. Montana Power Company* (1963), 143 Mont. 134, 387 P.2d 438, we concluded that the statute relied on by the State of Montana to establish residency in this case was not a definition at all. Referring to the same statute, we held:

> "However, *these are guides for interpretation, they are not a definition*. This is unavoidable, for as Mr. Justice Holloway observed in Carwile v. Jones, 38 Mont. 590, at page 602, 101 P. 153, at page 158, 'it is as easy to understand the meaning of "residence" as it is to understand the meaning of some of the terms used in the rules for determining the meaning of "residence." *Every case must stand upon its own facts, and a decision in any event must, of necessity, be the result of a more or less arbitrary application of the rules of law to the facts presented'.*"

*McCarthy*, 387 P.2d at 441-42 (quoting *Kunesh v. City of Great Falls* (1957), 132 Mont. 285, 289-90, 317 P.2d 297, 299).

14

If § 1-1-215, MCA, does not provide a definition of residence, and if § 87-2-102(2), MCA, did not, in 1989, have a definition of residence other than by reference to § 1-1-215, MCA, then what notice did the Monroes have that when they filled out this application for a resident hunting license they were violating the law?

Arbitrary, after-the-fact applications of the criminal law are exactly what the Due Process Clause, through the vagueness doctrine is designed, in fairness, to avoid. In defining the values that are offended by vague criminal statutes, the United States Supreme Court has stated as follows:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant danger of arbitrary and discriminatory application. [Emphasis added].

*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222, 227-28 (footnotes omitted).

According to our own prior decisions, the residency statute in this case requires the sort of *ad hoc*, arbitrary, judicial application that the Due Process Clause clearly prohibits according to the decisions of the United States Supreme Court. That

15

observation should resolve the issue raised by the Monroes on appeal to this Court.

However, the majority has inexplicably added a new element to the vagueness doctrine. The majority concludes that if anyone would understand they are not a resident under this statute, then it cannot be unconstitutionally vague. In other words, the majority has eliminated the former requirement that a statute give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute," and instead, substituted the requirement that if one out of 100 people would understand that his or her conduct is prohibited, it makes no difference that the other 99 people of average intelligence do not have the foggiest notion about what the statute prohibits. In support of this unprecedented conclusion, the majority cites *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362. However, in doing so, the majority has taken language from *Hoffman* out of context and misapplied its holding.

In *Hoffman*, the defendant was charged with violating an ordinance which required that he obtain a license if he sold any items that were "'designed or marketed for use with illegal cannabis or drugs . . . .'" *Hoffman*, 455 U.S. at 492. In his business, he sold a variety of merchandise, including "phonographic records, smoking accessories, novelty devices, and jewelry . . . ." *Hoffman*, 455 U.S. at 491. The Circuit Court of Appeals concluded

16

that the statute was unconstitutionally vague on its face because of its application to certain items sold by defendant, such as ordinary pipes or paper clips. The Supreme Court discussed the requirement that the statute be impermissibly vague in all of its applications in the context of whether a plaintiff could challenge the constitutionality of the statute if at least some of <u>his conduct</u> was clearly proscribed by the statute. It concluded that he could not. The Supreme Court said nothing about a requirement that the statute be vague with regard to every conceivable person to whom it could be applied. In explaining its holding, the Court stated as follows:

> The ordinance requires Flipside to obtain a license if it sells "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by the Illinois Revised Statutes." Flipside expresses no uncertainty about which drugs this description encompasses; as the District Court noted, 485 F.Supp. at 406, Illinois law clearly defines cannabis and numerous other controlled drugs, including cocaine. Ill. Rev. Stat., ch. 56½, ¶¶703 and 1102(g) (1980). On the other hand, the words "items, effect, paraphernalia, accessory or thing" do not identify the type of merchandise that the village desires to regulate. Flipside's challenge thus appropriately focuses on the language "designed or marketed for use." Under either the "designed for use" or "marketed for use" standard, we conclude that at least some of the items sold by Flipside are covered. Thus, Flipside's facial challenge is unavailing.

*Hoffman*, 455 U.S. at 500 (footnote omitted).

It is clear from the quoted passage, that when discussing "all of its applications" the Supreme Court was referring to all of the statute's applications to that defendant's conduct.

17

The residency requirement under which the Monroes are being prosecuted was so vague that many county attorneys have refused to prosecute based on the criteria that it establishes, and the former head of the Department of Fish, Wildlife, and Parks asked that it be amended to provide some workable guidelines in the future. In his testimony before the Legislature in support of the proposed amendment to § 87-2-102(2), MCA, which became effective on July 1, 1991, K. L. Cool testified as follows:

Senate Bill 298 consolidates and clarifies the elements necessary to determine legal residency for purposes of obtaining hunting, fishing and trapping licenses. The residency requirements, as presently written, are not specific enough to effectively support criminal prosecutions and, in fact, are sometimes confusing to sportsmen because the requirements are vague. County attorneys prosecuting residency cases in courts have frequently found the current residency statutes unworkable. Some county attorneys have told us they will no longer prosecute residency cases until Montana has a workable law. This bill will not change who qualifies as a resident, but will make specific and clarify the standards for determining residency.

Simply stated, the current statute defines a resident as a person who has moved to Montana and intends to make his or her home here. The only specific requirement is that a person must be a resident 6 months prior to being eligible to purchase a resident hunting, fishing or trapping license. With this vague and general definition, it is understandable that county attorneys have difficulty prosecuting an individual who owns property and lives part of the year in Montana, but earns his living and pays state income taxes in another state.

Mr. Cool's testimony, in combination with our previous decisions, including *McCarthy*, are perfect illustrations of the kind of arbitrary applications that resulted from the vague language used to define a resident in Montana's hunting, trapping, and fishing license laws. Because of uncertainty about the meaning of

18

the statute, prosecutions under the statute are arbitrary and have historically depended on the county where a violation is suspected. Even if charges are brought, successful prosecution depends on an arbitrary case-by-case application of the statute in the judicial system. Since this is the kind of unpredictability and unfairness that the vagueness doctrine is intended to prohibit, I would conclude that the statute pursuant to which the Monroes have been prosecuted was unconstitutionally vague in violation of the due process clauses in the Montana and Federal Constitutions and would reverse the judgment of the District Court.

For these reasons, I dissent from the majority opinion.

_____
Justice

Justice William E. Hunt, Sr., and Justice James C. Nelson join in the foregoing dissenting opinion.

_____

_____
Justices

19

March 30, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Carl A. Hatch, Esq.
Small, Hatch, Doubek & Pyfer
39 Neill Ave.
Helena, MT 59601

Mike McGrath, County Attorney
Vicki Frazier, Deputy
L&C Co. Courthouse, 228 Broadway
Helena, MT 59601

Hon. Joseph P. Mazurek
Attorney General
Justice Building
Helena, MT 59620

J. Stuart Bradshaw
CUMMINGS & BRADSHAW
85 Main Street
Stevensville, MT 59870

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy